---

(82 Misc. Rep. 632.)

MUTUAL LIFE INS. CO. OF NEW YORK v. UNITED STATES HOTEL CO. et al.

(Supreme Court, Special Term, Saratoga County. March, 1913.)

1. PRINCIPAL AND SURETY (§ 10*)—CONTRACTS OF SURETYSHIP.
   Where defendants gave a bond as collateral to the bond and mortgage of another, they were sureties for the performance of the obligation of the principal obligor.

   [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 23–27; Dec. Dig. § 10.*] .

2. PRINCIPAL AND SURETY (§ 59*)—CONTRACTS—LIABILITY.
   The liability of sureties is strictissimi juris and will not be extended by implication.

   [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 103, 103½; Dec. Dig. § 59.*]

3. PRINCIPAL AND SURETY (§ 59*)—CONTRACTS OF SURETYSHIP—CONSTRUCTION.
   Contracts of suretyship are construed in the same manner as ordinary contracts.

   [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 103, 103½; Dec. Dig. § 59.*]

4. PRINCIPAL AND SURETY (§ 59*)—CONTRACT OF SURETYSHIP—CONSTRUCTION.
   Ambiguous language in a contract of suretyship will be construed most strongly against the surety.

   [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 103, 103½; Dec. Dig. § 59.*]

5. GUARANTY (§ 38*)—CONTRACTS OF SURETYSHIP—"CONTINUING GUARANTY."
   A bond given as collateral to a mortgage, reciting that it should remain in full force and effect until the actual payment of the indebtedness, is not a "continuing guaranty" in the sense that those words are ordi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

narily used; a "continuing guaranty" contemplating a succession of liabilities for which as they accrue the guarantor becomes liable.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 47; Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 2, p. 1509; vol. 8, p. 7615.]

6. PRINCIPAL AND SURETY (§ 87*)—CONTRACTS—ACCRUAL OF ACTION.
Upon contracts for continuing guaranties a right of action accrues with each freshly incurred liability, while upon an ordinary contract of suretyship the right of action accrues only upon the maturity of the obligation.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 121; Dec. Dig. § 87.*]

7. PRINCIPAL AND SURETY (§ 87*)—ACCRUAL.
Where defendants executed a bond as collateral security for a mortgage due in 1880, the right of action on their bond accrued upon the maturity of the principal debt and nonpayment.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 121; Dec. Dig. § 87.*]

8. MORTGAGES (§ 319*)—PERIOD OF LIMITATION—PRESUMPTIONS.
Under Code Civ. Proc. § 381, declaring that an action upon a sealed instrument must be brought within 20 years after the cause of action accrued, and section 415, providing that the period must be computed from the accrual of the right to relief to the time when the claim to relief was actually interposed, a mortgage debt due more than 20 years is conclusively presumed to have been paid, in the absence of proof of part payment during that period.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 855–863, 875, 913, 1356, 1366; Dec. Dig. § 319.*]

9. MORTGAGES (§ 319*)—PRESUMPTIONS—EFFECT.
The presumption of payment of a mortgage debt arising out of the lapse of more than 20 years has the same effect as if the fact of payment had been proved in any other manner.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 855–863, 875, 913, 1356, 1366; Dec. Dig. § 319.*]

10. LIMITATION OF ACTIONS (§ 46*)—CONTRACTS OF SURETYSHIP—CONSTRUCTION.
A recital in a bond, given as collateral to a bond and mortgage, that it should remain in effect until actual payment, does not add anything to the effect of the bond, the law implying that condition, and hence it does not stop the running of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 240–253; Dec. Dig. § 46.*]

11. LIMITATION OF ACTIONS (§ 46*)—CONTRACTS—CONSTRUCTION.
A provision in a bond given as collateral security to a bond and mortgage that, in case of any agreement between the mortgagor and mortgagee extending the time for payment, the obligors in the bond shall continue liable according to the agreement, must have a reasonable construction, and applies only to extensions made within the period of limitations, and does not prevent the running of the statute of limitations, which begins on the accrual of a right of action on the bond.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 240–253; Dec. Dig. § 46.*]

12. LIMITATION OF ACTIONS (§ 15*)—WAIVER OF LIMITATIONS.
Statutes of limitation being enacted out of considerations of public policy, a person cannot, in advance, waive the benefit of the statute, and

'For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hence obligors in a bond who attempted to waive the benefit of the statute are not precluded from pleading it.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 62–65; Dec. Dig. § 15.*]

13. LIMITATION OF ACTIONS (§ 139*)—EFFECT OF LIMITATIONS.

The obligor in a bond given as collateral to a bond and mortgage is completely discharged from liability by the lapse of 20 years, though the statute of limitations only bars the remedy, and hence his liability cannot be revived by an extension of the time of the payment of the mortgage, even though the bond provided that extensions of time for the payment of the mortgage should be binding on the obligors.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 574, 593, 621; Dec. Dig. § 139.*]

14. JUDGMENT (§ 585*)—CONCLUSIVENESS—MATTERS CONCLUDED.

Defendants were obligors in a bond given as collateral to a bond and mortgage. In a previous action against the mortgagors by a beneficiary of the trust, defendants were made parties, and it was adjudicated that the mortgage was unpaid and that there should be a sale of the trust property subject to the mortgage liens and the rights of defendants as lessees. *Held* that, as the complaint raised no issue of defendants' liability on the bond, the adjudication was not conclusive of defendants' liability.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 585.*]

15. PLEADING (§ 149*)—CROSS-ACTIONS.

Though both at common law and under the express provisions of Code Civ. Proc. §§ 521, 1204, the ultimate rights of defendants as to matters between themselves can be adjudicated in the action against them, it is only when such issues are pertinent to the subject-matter of the main issues therein.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 149.*]

16. LIMITATION OF ACTIONS (§ 146*)—ACKNOWLEDGMENT OF DEBT.

An adjudication of the amount due on a mortgage debt is not an acknowledgment of the debt or a promise to pay by sureties for the debt who were parties to the action; Code Civ. Proc. § 395, requiring the promise to be in writing signed by the parties sought to be charged.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 593–596; Dec. Dig. § 146.*]

17. LIMITATION OF ACTIONS (§ 143*)—NEW ACKNOWLEDGMENT OF DEBT.

Where defendants, the obligors on a bond given as collateral to a bond and mortgage by trustees, were made defendants in a previous action against the mortgagors, an adjudication therein that defendants were beneficially interested in the mortgaged property did not affect their liability as sureties or waive the benefit of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 578–583, 587; Dec. Dig. § 143.*]

18. LIMITATION OF ACTIONS (§ 145*)—ACKNOWLEDGMENT OF DEBT.

Defendants, who are obligors on a bond given as collateral to a bond and mortgage by trustees, were made parties to an action against the trustees by a beneficiary for an accounting and sale of the trust property, and their attorneys entered into a stipulation amending the judgment recitals as to the amount due on the mortgage. *Held*, that this was not an acknowledgment of defendants' liability so as to waive the protection of the statute of limitations which had already run.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 584–588, 590–592; Dec. Dig. § 145.*]

19. LIMITATION OF ACTIONS (§ 143*)—AUTHORITY OF ATTORNEY.

While an attorney may be presumed to have the authority to stipulate that a judgment against his client may be amended in formal mat-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ters, yet an attorney cannot be presumed to have authority to acknowledge a debt already barred by the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 578–583, 587; Dec. Dig. § 143.*]

20. LIMITATION OF ACTIONS (§ 155*)—PART PAYMENT—WHAT CONSTITUTES.

Defendants, who were obligors in a bond given as collateral to a bond and mortgage by trustees, indorsed notes for the trustees who gave the mortgage, and they paid the interest with the proceeds of the notes. *Held* that, as defendants were in no way connected with the payment, such payments did not waive the benefit of the statute of limitations, for to have that effect payments must be made by the debtor or for him by his authorized agent.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

21. LIMITATION OF ACTIONS (§ 155*)—ACKNOWLEDGMENT—WHAT CONSTITUTES.

Defendants, the obligors on a bond given as collateral to a bond and mortgage by trustees, for those interested in the property, were themselves interested in the property. *Held*, that payments paid by the trustees for the benefit of all the beneficiaries was not an acknowledgment of the debt tolling the statute of limitations, even though it reduced their liability on the collateral bond.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

Action by the Mutual Life Insurance Company of New York against the United States Hotel Company and another, and William B. Gage and another. Judgment for the last-named defendants.

Fredrick L. Allen, of New York City (Murray L. Downs, of New York City, of counsel), for plaintiff.

Edgar T. Brackett, of Saratoga Springs (Charles C. Lester, of Saratoga Springs, of counsel), for defendants William B. Gage and John L. Perry.

BORST, J. On the 10th day of May, 1875, James M. Marvin and John Tayler Hall, as trustees for bondholders, executed their bond to Cornelius Vanderbilt, conditioned to pay $260,000 in installments, the last of which would fall due September 1, 1880. As collateral security for the payment of this bond and on the day of its date, Marvin and Hall executed to Mr. Vanderbilt a mortgage for the same amount as the bond and in terms and conditions the same, covering property commonly known as the United States Hotel property in the village of Saratoga Springs, and to which they held the title as trustees. On the 27th day of November, 1878, this bond and mortgage was assigned to the plaintiff in this action; there being at that time unpaid thereon the sum of $200,000.

On the day of the assignment of the Vanderbilt bond and mortgage to the plaintiff, there was executed, as collateral to it and the bond which accompanied it, another mortgage by Marvin and Hall as such trustees to secure to the plaintiff $200,000, payable $40,000 of principal September 1, 1879, and the balance, $160,000, September 1, 1880, interest semiannually at 6 per cent. and which contained the following clause:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The principal sum thereby secured being a portion of the principal sum conditioned to be paid by a certain bond or obligation bearing date the tenth day of May one thousand eight hundred and seventy-five, executed by James M. Marvin and John Tayler Hall, trustees as aforesaid, to Cornelius Vanderbilt."

On the date on which the latter mortgage was given, the defendants William B. Gage and John L. Perry executed and delivered to the plaintiff their bond, which recites that they are held and firmly bound unto the Mutual Life Insurance Company of New York, in the sum of $400,000, conditioned that they will pay $200,000 to that company, $40,000 part of said principal sum September 1, 1879, and the balance thereof, $160,000, September 1, 1880, with interest at 6 per cent., and then continues:

"It is expressly understood and agreed by and between the parties hereto that this obligation shall be and remain in full force and effect, and in no wise be impaired, until the actual payment of said sum to said obligees. And in case of a sale or transfer of any property embraced in a mortgage collateral to this bond, and in case of any agreement or stipulation between the owner or owners of said mortgaged property and the said obligees, extending the time or modifying the terms of the payment above stated, then the above-mentioned obligors shall continue liable to pay the sum above secured according to the tenor of any such agreement, unless expressly released and discharged in writing by the above-named obligees."

This bond further recites that it is given as collateral to the one given to Cornelius Vanderbilt and assigned to the Mutual Life Insurance Company.

The interest on the bond given to Vanderbilt and on the mortgages was regularly paid by Marvin and Hall, trustees, until March 1, 1904, when they conveyed the mortgaged premises by direction of the court to the United States Hotel Company, a domestic corporation then recently formed. Interest was thereafter paid on the mortgages by the hotel company until March 1, 1912.

On November 23, 1908, the plaintiff and the United States Hotel Company stipulated that on that date there was unpaid on the Vanderbilt bond and mortgage of principal $190,000, with interest at 5½ per cent. per annum from September 1, 1908, and extended the time of the payment of that bond and mortgage at that rate of interest to September 1, 1909, provided the interest was paid at that rate semiannually on the 1st days of March and September in each year.

This action was commenced in December, 1912. No question is made but that the plaintiff is entitled to foreclose these mortgages in this action, and that there is unpaid on them of principal, interest, and certain lawful expenditures connected with the care of the property, $194,534.66. Plaintiff, however, contends that it is entitled to a judgment for any deficiency against the defendants Gage and Perry which may arise on the sale of the mortgaged property because of the covenants in their bond, while those defendants urge the statute of limitations as a defense to their alleged liability, and this presents the sole issue for determination in this action.

On this issue, it is important to keep the following facts before us: The last installment of principal became due on the mortgages September 1, 1880. The extension of the Vanderbilt bond and mortgage on

November 23, 1908, by the plaintiff and the United States Hotel Company to September 1, 1909, was not made until over 28 years after the mortgages were due and payable.  The Gage and Perry bond was executed and delivered on November 27, 1878, and had therefore run within 4 days of 30 years at the time of the making of the extension agreement, and over 28 years from the time the last installment of principal became due on the mortgages, and over 34 years at the time of the commencement of this action.

The contention of the plaintiff that there had been an acknowledgment of liability on their bond by Gage and Perry by payment of interest, promise to pay, or otherwise, will be considered later.  For the present I shall consider the question presented as raised by the facts thus far stated.

[1]  The bond of Gage and Perry was given as collateral to the Vanderbilt bond and mortgage, and they thereby became sureties for the payment of that indebtedness.  That bond expressly states that it is given as collateral to the bond of Marvin and Hall, so there can be no doubt of the intention of the parties from that statement, and by the other transactions to which reference has been made, to constitute them sureties for the performance of the obligation of the principal obligors.

[2]  The law favors them to the extent that it does not extend their obligation or liability by implication.  They must be held to what they have agreed, but, when that is ascertained, to no more.  The liability of sureties is strictissimi juris, and the courts have always held that their liability is not extended beyond the actual intent of their contracts.  McCluskey v. Cromwell, 11 N. Y. 593; Barns v. Barrow, 61 N. Y. 39, 42, 19 Am. Rep. 247; Bank v. Valentine, 155 App. Div. 91, 139 N. Y. Supp. 1037, 1039.

[3]  The same rules are applied, however, in the construction of contracts of suretyship as are applied to the construction of contracts in general.  But when the construction and meaning of a surety contract is determined, then the law holds that the liability under it shall not go beyond its precise stipulations.

[4]  If ambiguous language has been used in a contract of suretyship, its language will be construed most strongly against the guarantor.  Gamble v. Cuneo, 21 App. Div. 413, 47 N. Y. Supp. 548; Crist v. Burlingame, 62 Barb. 351; Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669; Catskill Nat. Bk. v. Dumary, 206 N. Y. 550, 100 N. E. 422.

[5]  With these principles in mind, we come to a consideration of the construction of the bond of Gage and Perry and their liability under it.

The bond in question is not a "continuing guaranty" in the sense that those words are ordinarily used with reference to obligations of suretyship.  A "continuing guaranty" contemplates a succession of liabilities, which, as they accrue, the guarantor becomes liable for.  It is prospective in its operation and is generally intended to provide security in respect to future transactions within certain limits.  The bond of Gage and Perry, however, had relation only to a debt that had been in existence for three years at the time it was given and the

144 N.Y.S.—31

amount of which was certain. The language of this bond does not suggest the incurring of any new liability nor addition to the amount of the indebtedness existing at its date. Numerous authorities have been cited by counsel for the plaintiff in the attempt to maintain the position that this bond was a continuing guaranty in the ordinary sense of those words. I think, however, the obligations under consideration in those cases and the instant case are clearly distinguishable. The fundamental and radical difference between the cases cited by plaintiff's counsel and the case under consideration is that whereas in those cases there was to be a liability for advances to be made from time to time or indebtedness to be incurred at different times and liabilities which would change, while here there was particularized a single particular debt, and the nature of that debt was such that it must have been in contemplation of the parties that no other debt and no change in that debt, and no other transaction was to be covered by the obligation given. Merchants' Merc. Nat. Bk. of Whitehall v. Hall, 83 N. Y. 338, 344, 38 Am. Rep. 434. ·

[6] Upon contracts for continuing guaranties, a right of action accrues with each freshly incurred liability, and new rights of action arise upon them from time to time. In the present case, the right of action could be single only. It accrued on the 1st day of September, 1880. The bond under which Gage and Perry became liable for that indebtedness and the mortgages for which that bond was collateral or surety did not contemplate any new or additional obligation, and no such new obligation is claimed to have been incurred.

[7] Now a cause of action undoubtedly accrued to the plaintiff, as suggested by counsel for defendants Gage and Perry, on their bond on September 1, 1880, because it is stipulated in that bond that they would pay $40,000 September 1, 1879, and $160,000 September 1, 1880. But the liability on that bond, as a promise to pay the debt secured by the mortgages, which it stipulates to pay, is the test when the statute · began to run in favor of the bond against that mortgage liability. That liability accrued on the mortgages September 1, 1880, which happens to be the date when the liability accrued on the bond independent of the mortgages.

[8] An action upon a sealed instrument must be brought within 20 years after the cause of action has accrued. Code of Civil Procedure, § 381. The periods of limitations prescribed by the Code of Civil Procedure must be computed from the time of the accruing ·of the right to relief by action to the time when the claims to that relief is actually interposed by the party. Id. § 415. After a mortgage debt has been due 20 years, there is a conclusive presumption of payment, in the absence of proof of part payment within that period. Ouvrier v. Mahon, 117 App. Div. 749, 102 N. Y. Supp. 981; Forbes v. Reynard, 113 App. Div. 306, 309, 98 N. Y. Supp. 710.

[9] A mortgage more than 20 years past due is presumed to have been paid and does not constitute a cloud upon title (Belmont v. O'Brien, 12 N. Y. 394; Paget v. Melcher, 42 App. Div. 76, 82, 58 N. Y. Supp. 913), and when payment of a sealed instrument for the payment of money is, prima facie, presumed from lapse of time, such pre-

sumption has the same force and legal effect as if the fact had been proved in any other manner (Martin v. Stoddard, 127 N. Y. 61, 27 N. E. 285).

[10] The plaintiff, however, contends that the obligors in the bond in question agreed by the language used in their bond that it should remain in force so long as the guaranteed bond remained in force, and that they would recognize and be bound by any agreement of renewal or extensions made between the original mortgagor and mortgagee, and to support this contention call attention to this language in the bond:

"This obligation shall be and remain in full force and effect and in no wise be impaired until the actual payment of said sum to said obligees, * * * and in case of any agreement or stipulation between the owner * * * of said mortgaged property and the said obligees extending the time or modifying the terms of the payment above stated, then the above mentioned obligors shall continue liable to pay the sum above secured according to the tenor of such agreement unless expressly released and discharged in writing by the above-named obligors."

The language of the first sentence quoted adds nothing to what is imported in the words by which the obligors became bounden and covenanted to pay. Every obligor in a bond remains bound until payment in some form. Nothing is added to the force of the situation by stating what the law implies. It would add nothing to the effect of a promissory note nor extend its time of payment to add a statement at the end of the note that the same should remain in full force and effect and in no wise be impaired until its actual payment. The promise that the obligation should "remain in full force and effect," until "the actual payment of said sum," does not constitute a new engagement which fixed a different period of limitation from that which attaches to the whole debt.

[11] The language used in the bond, to the effect that the mortgage might be extended without affecting the liability of the obligors to pay, presents a more difficult and complicated question. The promise to pay, under this clause of the bond, depended upon the happening of a possibility which might or might not have materialized. Can it be said that the defendants' liability was not fixed, and that the statute did not begin to run until the cause of action ripened under the extension agreement? The extension agreement might or might not have been made. It might have been made within one period of time, or it might never have been made, and, if made, could it have been made for any period of time, however short or however long, and the obligors on the bond remain liable until the statute had run against the time for payment fixed in such agreement? To say that the statute would not begin to run until it had been determined whether an extension of time should be given, and, if given, only at the end of the time fixed in such extension, would in effect revive the ancient rule of the common law that a right of action which had once accrued was immortal.

[12] The language used in the bond is to receive a reasonable construction. We have already noted that the obligors under it are not liable beyond its precise stipulations. In my judgment the parties intended to provide that the time for payment of the Vanderbilt bond and mortgage might be extended without releasing Gage and Perry;

they having in mind that an extension of the time of payment by the principals without authority from the sureties would release the latter. What the parties desired evidently to do was to provide that whatever extension should be given was not to affect the obligors on the Gage and Perry bond, but that such extension, whatever it might be, was to be within the life of that bond, and the liability as obligors thereon. Any other construction of this bond would put the financial future of Gage and Perry wholly in the hands of the plaintiff. If the contention here suggested be accepted, then the statute had run in favor of the obligors when the extension agreement was made. I am of the opinion that this construction of this bond should prevail. But the statute of limitations bars the action, I think, for another reason.

It is not stated in the clause of the bond under consideration that there shall be any extension of the time when the statute of limitations shall begin to run against liability on the Gage and Perry bond, nor is there any promise on their part to waive such statute.

It is urged by plaintiff's counsel, however, that by the language referred to "it was intended that, no matter how long the Mutual Life Insurance Company of New York might defer the time of payment, and no matter how it might modify the terms of payment, William B. Gage and John L. Perry should continue liable as guarantors. No release or discharge by operation of law, whether it arose out of an understanding or agreement between the Mutual Life Insurance Company of New York and the owners of the equity of redemption or even the statute of limitations, was to discharge Messrs. Gage and Perry." And plaintiff's counsel asserts that it is competent for a party to contract to waive the statute of limitations in the contract creating the obligation in advance of the expiration of the statutory period for an unlimited time. In support of this contention he cites Foley v. Royal Arcanum, 151 N. Y. 196, 45 N. E. 456, 56 Am. St. Rep. 621, in which it was held that the insured in a policy of life insurance might waive the provisions of section 834 of the Code of Civil Procedure in the contract of insurance, and that such waiver would be enforceable in an action afterwards brought upon the policy. The difference, however, in the two cases is obvious. The language of Thayer, J., in Adreveno v. M. R. R. Life Ass'n (C. C.) 34 Fed. 870, cited by the Court of Appeals in its opinion in the Foley Case, at once discloses the difference between the provisions of that section of the Code and the statute of limitations. Judge Thayer in the Adreveno Case said:

"The statute is construed in this state as conferring a privilege merely, that may be waived; it is not declaratory of any public policy. The public is not concerned in excluding the testimony of a physician as to the condition of a patient, if the patient himself does not object to such disclosures. In this respect the courts of this state follow the rulings in New York and Michigan, under a similar statute, as appears by the cases of Cahen v. C. L. Ins. Co., 41 N. Y. Super. Ct. 296, R. R. Co. v. Martin, 41 Mich. 667 [3 N. W. 173]."

If the contention of plaintiff's counsel is correct, then the statute of limitations can be waived in advance for an unlimited time. I do not understand that this can be done. An agreement made at the inception of a liability to the effect that the statute of limitations will

never be interposed as a defense would be flying in the face of the statute. A consideration of public policy is embodied in the statute of limitations, and, while its provisions may be waived at a trial by not pleading the statute, its provisions cannot be waived in advance for unlimited time.

In Shapley v. Abbott, 42 N. Y. 443, 452, 1 Am. Rep. 548, an action had been brought, as to which there had been an agreement not to plead the statute of limitations. Judge Earl, writing, says:

"A party may, undoubtedly, without trenching upon public policy, waive the defense of usury, or of the statute of frauds, or of the statute of limitations, by omitting to set up the defense when sued, and he may waive his statute of exemption by turning out exempt property where the officer comes with the execution; but no case has occurred to me in which a party can, in advance, make a valid promise that a statute founded on public policy shall be inoperative."

Therefore, notwithstanding the language in the bond to the effect that the defendants Gage and Perry should remain liable unless expressly released and discharged in writing, they still have the right to plead, and rest under the protection of, the statute of limitations.

[13] Further the extension agreement was not made within the life of the original debt, embraced in the Vanderbilt bond and mortgage, nor within the life of such debt as described in the collateral bond executed by Gage and Perry, as more than 28 years had elapsed from the time such extension was made. At the time the extension agreement was made, no liability had existed against Gage and Perry on their bond for over 8 years. If any liability was created against them by the agreement between plaintiff and the hotel company on the 23d day of November, 1908, it had to be a new one, for the old one was outlawed on that date. I am of the opinion that the terms of the bond did not permit a revival of a liability which the law presumed was barred without the consent or concurrence of the obligors. On the 2d day of September, 1900, the day after the 20-year statute had run against their liability, on their collateral bond, Gage and Perry by operation of the statute in the eyes of the law were just as free from liability as though they had on that day paid the amount unpaid on the Vanderbilt bond in cash. The only difference would be that, in one case, the proof of the payment would be actually made, and, in the other case, it would be presumed to have been made. It is true that the effect of the statute of limitations is only to bar the remedy and does not pay the debt (Hulburt v. Clark, 128 N. Y. 295, 28 N. E. 638, 14 L. R. A. 59), while payment discharges it; but, so far as the legal liability of the debtor is concerned, the one is as effectual as the other.

The plaintiff, however, presents three other grounds for holding the statute of limitations inoperative: An adjudication in another action which is claimed to operate as an acknowledgment of the debt, a stipulation which is asserted admitted an unpaid indebtedness, and a payment on the debt. We shall consider these contentions in the order named.

[14] In April, 1903, one Charles Messenger, holding a certificate of beneficial interest in the trust property covered by the mortgages in question, brought an action against the trustees of the property making

Gage and Perry and the plaintiff herein parties defendant, to determine the validity of the trust, the legal title of the trustees to the equity of redemption, to have a sale of the property, and to have the trustees account. In the complaint in that action the mortgages in question are stated to exist, and that there was $200,000 unpaid upon them, and that Gage and Perry were tenants of the property. That action proceeded to judgment in October, 1903, and it was adjudged therein that the mortgages were held by the Mutual Life Insurance Company, that there was due and unpaid thereon $200,000, with interest from September 1, 1903, and that there should be a sale of the property subject to the said mortgage liens. The property was afterwards sold to the United States Hotel Company subject to the plaintiff's mortgages and the rights of Gage and Perry as lessees thereof. The judgment in that action undoubtedly established, as contended by counsel for plaintiff, that there was then due on the plaintiff's mortgages $200,000, which was a lien upon the property. It may also be conceded that it estab-, lished that Gage and Perry, as lessees of the mortgage property, had a personal interest therein.

There was no adjudication, however, of a liability on the part of Gage and Perry to pay the mortgaged debt. Their collateral bond was not an issue in the action. It is true that the mortgage debt was established by that judgment, but that did not establish any liability on the part of Gage and Perry to pay it; that was not the object nor within the purview or purpose of the adjudication. The purpose was to fix the amount which should stand as the debt against the property and be known to the parties for that purpose, not who should nor who was liable to pay.

The complaint in that action made no reference to the bond of Gage and Perry, and their liability on it could not therefore have been raised or tried by this plaintiff in that suit. It was irrelevant to any of the matters there litigated. The judgment in that case perhaps concludes Gage and Perry against questioning the amount of the mortgage debt and the extent of the liens upon the trust estate, but it does not conclude them as to the existence of a personal liability on their part for the payment of a deficiency.

[15] The plaintiff in the Messenger action had no interest in the question as to whether Gage and Perry should pay or should not pay any deficiency which might exist after applying the mortgaged property to the payment of the liens thereon. At common law, as well as by the provisions of sections 521 and 1204 of the Code of Civil Procedure, the ultimate rights of two or more defendants in an action as between themselves may be determined; but such determination can relate only to matters pertinent to the allegations in the complaint. In other words, if plaintiff brought an action to foreclose a mortgage against a number of defendants, one of such defendants could not properly set up by answer that another defendant was indebted to him on a promissory note and litigate that question in that action. The rights of the parties defendant to be determined between themselves must necessarily be those arising out of or connected with or resulting from the cause of action set forth and maintained by and in favor of the plaintiff.

The adjudication in the Messenger action did not purport to settle the rights of the plaintiff and the defendants Gage and Perry under the collateral bond, nor could such an issue have been settled under the complaint in that action.   Binghamton Sav. Bk. v. Bing. Trust Co., 85 Hun, 75, 84, 32 N. Y. Supp. 657; Kay v. Whittaker, 44 N. Y. 565; Van Allen v. Rogers, 5 Misc. Rep. 420, 26 N. Y. Supp. 708; Smith v. Hilton, 50 Hun, 236, 2 N. Y. Supp. 820; New York Life Co. v. Cuthbert, 87 Hun, 339, 34 N. Y. Supp. 300; Jones v. Grant, 10 Paige, 348; Elliott v. Pell, 1 Paige, 263; House v. Lockwood, 137 N. Y. 259, 33 N. E. 595; Reynolds v. Ætna Life Ins. Co., 160 N. Y. 635, 55 N. E. 305.

[16] The adjudication in the Messenger action as to the amount of the mortgage debt is not in itself an acknowledgment or promise to pay on the part of the defendants Gage and Perry.   Section 395 of the Code of Civil Procedure provides:

"An acknowledgment or promise contained in writing, signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract, whereby to take a case out of the operation of this title.   But this section does not alter the effect of a payment of principal or interest."

There must come with every acknowledgment or promise to pay such as is required by this section a recognition or connection of personal liability.   This may be expressed or implied, but it must exist. In the case at bar this is wanting.   An acknowledgment such as is required under this section must be such that the law will imply a promise to pay the debt.   Stoker v. Walters, 12 Wkly. Dig. 321.

In Purdy v. Austin, 3 Wend. 191, it is said:

"The general doctrine on this subject, as laid down by the Supreme Court of the United States in case of Bell v. Morrison, 1 Pet. 351 [7 L. Ed. 174], is that if there be no express promise, and one is to be raised by implication of law from an acknowledgment, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay."

In Bloodgood v. Bruen, 8 N. Y. 362, the defendant Bruen was a witness and testified to the indebtedness in answer to a bill in chancery filed by a third party.   It was said:

"An admission obtained in this way cannot of itself be made the foundation of a new contract or promise."

I gather from the cases that the promise, in order to constitute an acknowledgment of a debt, must recognize an existing indebtedness of the debtor (Conn. Trust & S. B. Co. v. Weed, 172 N. Y. 497, 65 N. E. 261, 92 Am. St. Rep. 756), with an intention on his part to pay it. Here there was wanting the recognition of an existing debt against them by Gage and Perry and nothing to support the claim, either by direct evidence or by implication, of a promise on their part to pay it. An acknowledgment or admission that a third party owed a debt certainly could not bind the party making such admission or acknowledgment.

[17] Prior to the making of the Vanderbilt mortgage by Marvin and Hall, the United States Hotel property had been sold under a judgment of foreclosure of a trust mortgage to them, and they had

taken title as trustees by a subscription agreement entered into with the bondholders under the foreclosed trust mortgage. Certificates were issued to the persons interested in the bonds which represented their beneficial interests in the trust property held by Marvin and Hall. The Messenger complaint alleges that Gage and Perry held certain of these beneficial certificates. In the judgment in the Messenger action these certificates are adjudged to be personal property. I do not see that this fact, nor the fact that Gage and Perry were tenants of the mortgaged property, affects the question just considered.

[18, 19] It appears that in 1903 by a stipulation signed by the attorneys for Gage and Perry, as well as by the other attorneys in the action, that the Messenger judgment was amended, and it is now claimed on behalf of this plaintiff that because in that stipulation it was recited there was $200,000 due on the mortgages, and that they were existing liens against the mortgaged property, that this was such a written acknowledgment of the debt as to make Gage and Perry liable as on a new promise on their bond. Much of the discussion already had I think covers this contention. But further:

"The right of action once barred by statute can only be revived by the act and assent of the party to be charged." Bruce v. Tilson, 25 N. Y. 194, 196.

While doubtless an attorney may be presumed to have authority to stipulate that a judgment against his client may be amended in formal particulars, yet nevertheless the authority of such attorney cannot be presumed, but must be proved to admit the liability of his client to pay large sums of money or to waive for him the statute of limitations. Here there is no proof of such authority on the part of the attorneys.

[20] In 1909 and 1911 interest was paid on the mortgages from money raised on notes indorsed by Gage and Perry. One of these notes was taken up by the indorsers before the commencement of this action; the other is outstanding unpaid. No knowledge is shown that the indorsers knew for what purpose the money so raised was to be used, nor is there any proof that either Gage or Perry were connected in any way with the payments. It has been repeatedly held in this state that payments of interest by one debtor, although with the knowledge of the other, does not prevent the running of the statute in favor of the latter. To have that effect the payments must have been made by him or for him or by his authorized agent. McMullen v. Rafferty, 89 N. Y. 456; Hoover v. Hubard, 202 N. Y. 289, 95 N. E. 702.

[21] There remains for examination but one other of the questions urged by counsel for consideration. Were Marvin and Hall, as trustees, the agents of Gage and Perry in the paying of principal and interest on the mortgages, and did they thus prevent the statute running against the latters' bond? As noted, the title to the property was decided in the Messenger Case to be in Marvin and Hall as trustees, and the certificates of beneficial interest, of which certain of them were owned by Gage and Perry, were held to be personal property. The trustees were to, and presumably did, apply the moneys which they derived from the property toward its maintenance and the payment of the principal and interest on the mortgages. This was the perform-

ance of a duty which they owed alike to all those having certificates of beneficial interests in the trust. These moneys were theirs, but for which they were to account because they came from the property. There was, however, in all this wanting the element of an acknowledgment of an indebtedness of theirs by Gage and Perry on the mortgages. There was no connection between the payments by the trustees and the obligation of Gage and Perry on their bond. The simple fact that the proceeds of the property went to reduce the indebtedness, and thus benefited the certificate holders, is not an acknowledgment from which the law can imply a promise to pay on the part of these obligors.

These views lead to the conclusion that Gage and Perry are not liable on their collateral bond. I think this is in accord not only with reason but justice. No claim was made upon this bond so far as appears by the proof presented in this case until some 34 years after its execution. It is said that statutes of limitations are wise and beneficial, not designed merely to raise presumption of payment of a just debt from lapse of time, but to afford security from stale demands after the true statement of the transaction may have been forgotten or be incapable of explanation. It is also said that such statutes are statutes of repose. If so, the claim made in this action has slumbered for so long a time that it should be barred.

A decree may be prepared in accord with this opinion.