---

NEWMAN v. NEWMAN et al.

Appeal of EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited et al.   (No. 248/64.)

(Supreme Court, Appellate Division, Third Department.   November 10, 1915.)

1. MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—EMPLOYMENT—"EMPLOYÉ."

Workmen's Compensation Act (Consol. Laws, c. 67) § 3, restricting its benefits to one engaged in a hazardous work, defines an "employé" as a person engaged in a hazardous employment in the service of an employer, conducting the same upon the premises or at the plant, or in the course of his employment away from the plant, of his employer.   Section 2, group 30, provides for compensation for those injured in packing houses, abattoirs, and the manufacture or preparation of meat; while group 41 provides for compensation for injuries to the operators of trucks or vehicles on the streets.   Deceased, who drove a delivery wagon for a butcher and sometimes assisted in the shop, came to his death in stumbling over a bucket of broken glass while he was making a delivery on foot.   Held, that the injury was not the result of a risk incident to his employment, as this delivery exposed him to no more danger than any other individual would have been exposed to while walking in the same place.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

2. STATUTES ☞226—CONSTRUCTION.

Where an act is borrowed from a foreign state, the construction given to it by the foreign court should be given much consideration; it being presumed that the lawmakers knew that construction.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. ☞226.]

Appeal from Workmen's Compensation Commission.

Proceeding under the Workmen's Compensation Act by Belle Newman, for compensation for herself and children for the death of Frank Newman, against George H. Newman, employer, and the Employers' Liability Assurance Corporation, Limited, insurer.   From an award by the Workmen's Compensation Commission, defendants appeal.   Reversed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Bertrand L. Pettigrew, of New York City (W. L. Glenney, of New York City, of counsel), for appellants.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Dep. Atty. Gen., of counsel), for the State.

Jeremiah F. Connor, of New York City, for Compensation Commission.

E. L. Hunt, of Oneida, for respondent Newman.

LYON, J. The single question presented by this appeal is whether the accidental injury sustained by the deceased, resulting in his death, was one arising out of his employment. Certain facts are undisputed, and were stipulated as follows:

"Agreed Statement of Facts.—Deceased was employed by George Newman, proprietor of a meat market at Oneida, N. Y., and his principal duties were that of driving a meat delivery wagon, acting both as driver and deliveryman. Occasionally he also assisted in the abattoir; and occasionally, when not engaged in his principal duties, he assisted in cutting and preparing meat for the purpose of retail sale, in accordance with the usual custom of a clerk in a retail meat store; also occasionally delivered meat in places very near the market, going to and from on foot. The wagon and horse was not used for deliveries after 7 p. m. On the night of the accident the deceased stopped delivering with the horse and wagon about 7 p. m., and worked in the market cutting and preparing meats in the aforesaid manner until 10 o'clock p. m., and was injured while on his way on foot to arrange with one Dungey for the preparation and care of a dressed hog, purchased by George Newman, to be called for the following Friday. At the time of the accident, deceased had a package of meat for delivery to a nearby flat. The place where he was injured was on the way he would take to go from the market to the flat."

As to the manner in which the deceased received his injuries, the Commission found:

"As he was proceeding from the market on his way to a flat where the meat was to be delivered, he fell on a pail of broken glass, severing a varicose vein, causing a hemorrhage which resulted in his death on November 26, 1914."

Awards were made to his widow and children of two-thirds of his weekly wages. From such awards this appeal has been taken.

[1] The benefits of the Workmen's Compensation Act are restricted to injuries or death incurred by employés engaged in one or more of the specified hazardous employments. An employé is defined as meaning:

"A person who is engaged in a hazardous employment in the service of an employer, carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant of his employer." Section 3.

Concededly, the hazardous employment in which the deceased was engaged at the time he was injured, if covered by the Workmen's Compensation Law, was included in one or both of the following groups:

"Group 30. Packing houses, abattoirs, manufacture or preparation of meats or meat products or glue."

"Group 41. The operation, otherwise than on tracks, on streets, highways or elsewhere of * * * wagons or other vehicles, * * * propelled by * * * mechanical or other power, or drawn by horses or mules."

Section 2.

We do not think the employment of deceased at the time he received the injury can be held to have been within group 30. The accident took place away from the market, and the transaction related to matters specified in that group simply to the extent of arranging for the preparation and care of the dressed hog. Neither do we think the employment can be held to have been within group 41. Concededly, the principal duty of deceased was to drive a meat delivery wagon, acting both as driver and deliveryman. He had put his horse up several hours before, and was engaged in the occupation of a deliveryman on foot. This occupation was not included in any of the groups of hazardous employments, nor was it on this occasion a part of, or in any way connected with, a delivery by horse and wagon, nor can it be said, under the circumstances, to have been a risk incidental to a hazardous employment. The accident did not arise out of a risk related or peculiar to his employment as such driver. It was a common risk, to which any person was equally exposed who chanced to travel that way on foot, without regard to the nature of his employment.

It was said in the case of McNichol v. Patterson, Wilde & Co. and Emp. Lia. Assur. Corp., Lim., 215 Mass. 497, 102 N. E. 697, in discussing the meaning of the words "arising out" of the employment:

"But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workingmen would have been * * * exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in the risk connected with the employment, and to have flowed from that source as a rational consequence."

The fact must not be lost sight of that in the case at bar the hazardous occupation as specified by the statute was that of the operation of a wagon driven by horses, and that in order to be within the statute the injury must have been received while the deceased was employed in that occupation or in one incidental to it. In the case of Sheldon v. Nedham, 7 B. W. C. C. 471, the English Court of Appeal held that under the English Workmen's Compensation Act, from which the words of our statute, "arising out of and in the course of his employment," were taken, a charwoman in regular employment, who was sent by her employer to post a letter at a post box about 100 yards from the house, and who slipped on a banana skin in the street and fell, breaking her leg, was not entitled to the benefit of the act, for the reason that the accident, being due to a risk no greater than is run by all members of the public, did not arise out of the employment. In the case cited, various earlier decisions germane to the question at bar are discussed by members of the court, and the above doctrine laid down. It was said by Cozens-Hardy, M. R.:

"It has been held repeatedly, not only by this court, but by the House of Lords, that in a case of this kind there must be some special risk incident to the particular employment, a risk which imposes a greater danger upon the employé than upon an ordinary member of the public. This can be instanced in many cases"

—which he then proceeds to discuss.

It was said by Swinfen-Eady, L. J.:

"I think the law is well established that if an accident happens to a person who is being employed, in the course of her employment, by reason of her being more exposed to risk than any other people by reason of that employment, the accident may properly be said to arise out of the employment. Now, Collins, M. R., in one of the lightning cases, Andrew v. Failesworth Industrial Society, Ltd., [1904] 2 K. B. 32, 6 W. C. C. 11, said this: 'If there is, under particular circumstances in a particular vocation, something appreciably and substantially beyond the ordinary normal risk which ordinary people run, and which is a necessary concomitant of the occupation the man is engaged in, then I am entitled to say that the extra danger to which the man is exposed is something arising out of his employment.' In all the cases in which the workman has recovered, there has been evidence that the occupation in which he was engaged exposed him to risks over and above those run by other people. * * * In my opinion the employment in this case did not expose the charwoman to any particular risk, or to any risk, by going to post a letter, other than that of every member of the public who walks along a street in the ordinary way, and I agree that compensation is not payable."

[2] As before stated, this wording of our statute was taken verbatim from the English act, and it is therefore reasonable to suppose that the distinguished members of the Wainwright Commission who formulated the act were familiar with the decisions of the English court to the time of adopting the wording of the English act. In fact, the report of the Commission, rendered to the Legislature in March, 1910, discusses at some length the English Workmen's Compensation Act of 1897 and its amendments (pages 41–43). The consideration given to the words "arising out of and in the course of his employment" by the English courts prior to the New York act is entitled to much consideration, in view of the similarity and purpose of the two acts. Bellegarde v. Union Bag & Paper Co., 90 App. Div. 577, 581, 86 N. Y. Supp. 72; 36 Cyc. 1154–1157.

Without necessarily going to the extent to which English courts have gone, we think it must be held that, under the conceded facts, the injuries sustained by the deceased did not arise out of his employment in a hazardous occupation or incidental to it. The awards made by the Commission must therefore be reversed.

Awards reversed, and claims dismissed. All concur.