In the Matter of the Estate of BENJAMIN T. B. HYDE, Deceased.

Surrogate's Court, New York County, October 29, 1941.

*Cadwalader, Wickersham & Taft* [*F. Sims McGrath* and *Clifton S. Hadley* of counsel], for the petitioners.

*Cornelius C. Webster*, for Curtis, Mallet-Prevost, Colt & Mosle, Herbert B. Matthesen and Thomas Roberts, respondents.

*Mitchell, Taylor, Capron & Marsh*, for the City Bank Farmers Trust Company, as successor trustee, etc., respondent.

*Bangser & Kaufmann,* for Suzanne de Groff Hyde and Frederick E. Hyde, Jr., respondents.

*Jacob Marx,* for J. Burleigh Cheney, respondent.

FOLEY, S.   This is a contested accounting proceeding.

(1) The major question arises out of the claim of Hilbert B. Matthesen.   It is based upon a judgment recovered by the claimant against the decedent in the City Court of the City of New York in the sum of $1,144.15, docketed on February 21, 1918.   By virtue of the terms of section 44 of the Civil Practice Act such a judgment is presumed to be paid and satisfied after the expiration of twenty years from the time when the party recovering it was first entitled to a mandate to enforce it.   This period of limitation expired on February 21, 1938.   The section further provides: " This presumption is conclusive, except as against a person, who within twenty years from that time makes a payment or acknowledges an indebtedness of some part of the amount recovered by the judgment or decree, or his heir or personal representative, or a person whom he otherwise represents.   Such an acknowledgment must be in writing and signed by the person to be charged thereby."

There is no contention of any payment on account ever having been made on behalf of the judgment debtor.   The only question presented is whether certain letters written by the attorney for the judgment debtor during the years 1922 and 1923 constitute acknowledgment of the indebtedness within the meaning of the section so as to rebut the presumption of payment of the judgment.   The surrogate holds that the letters in question are ineffectual to toll the running of the statute upon the grounds: *First,* that under the section the written acknowledgment must be signed by the party personally, and a writing by an agent or attorney is not sufficient to constitute such acknowledgment within the meaning of the statute; *second,* that even if a duly authorized agent could make such an acknowledgment, the attorney who wrote the letters was without any authority to bind his client by an acknowledgment of the debt.   The claim is, therefore, dismissed and the objections filed to the account are overruled.

*First.* Section 44 declares that " Such an acknowledgment must be in writing and *signed by the person to be charged thereby.*"   (Italics supplied.)   The quoted portion of the section may be traced through the predecessor sections of the Code of Civil Procedure (§§ 376, 395).   (See Notes, Throop's Ann. Code Civ. Proc. § 376).   Tracing back another step the provision is found in section 110 of the former Code of Procedure, which was in turn derived from the

English statute (9 Geo. IV, chap. 14, § 1), commonly known as "Lord Tenterden's Act." (First Report of the Commissioners on Practice and Pleadings, 1848, Code of Proc. pp. 119, 121.) The commissioners said (p. 121): "It will be observed, that in the section proposed, we have retained the substance of the English act, though we have endeavored to condense its phraseology, without altering its spirit."

An historical outline of the statute may be found in *Brinkman* v. *Cram* (175 App. Div. 372, 374; affd., 225 N. Y. 720).

Prior to the incorporation of this provision in our statutes in 1848, Lord Tenterden's Act was construed by the English courts. It was held that an acknowledgment by the agent of the debtor will not toll the running of the statute, but that the writing to be thus effectual must be signed by the party personally. (*Hyde* v. *Johnson*, 2 Bing. [N. C.] 776; 132 Eng. Reprint, 299; *Clark* v. *Alexander*, 8 Scott [N. R.], 147.) In *Hyde* v. *Johnson* (*supra* [decided in May, 1836]) Chief Justice TINDAL said: "It appears, therefore, that the Legislature well knew how to express the distinction, not only between the signature by the party, and a signature by his agent; but also to describe the different mode by which agents for different purposes are to be appointed * * *. When, therefore, we find in the statute now under consideration that it expressly mentions the signature by the party only, we think it a safer construction to adhere to the precise words of the statute, and that we should be legislating, not interpreting, if we extended its operation to writings signed, not by the party chargeable thereby, but by his agent."

When a provision is adopted from the laws of another State or country, the construction placed upon it by the courts of that State or country prior to its adoption here is of great weight. (*Matter of De Filippis* v. *Falkenberg*, 170 App. Div. 153, 157; affd., 219 N. Y. 581; *Matter of Newman* v. *Newman*, 169 App. Div. 745, 749; *Lipstein* v. *Provident Loan Society*, 154 id. 732, 734; *Schechtman* v. *Salaway*, 204 id. 549, 551; *Williams* v. *Tompkins, Inc.*, 208 id. 574, 581.) In *Ryalls* v. *Mechanics' Mills* (150 Mass. 190; 22 N. E. 766) Judge HOLMES aptly wrote: "this was the state of comment upon and construction of the English statute when the Massachusetts act was passed, copying its words very closely. We cannot deal with the latter quite on the same footing as if the Legislature had framed it in their own language, used for the first time. We must assume that they were content with the expounded meaning of the words which they adopted."

Lord Tenterden's Act was subsequently amended in 1856 so as to provide expressly that a writing signed by the duly authorized

agent of a party shall have the same effect as if signed by the party. (19 & 20 Vict. chap. 97.) In the face of this construction of the statute in the jurisdiction from which our statute was taken, and the amendatory phrase later added in that jurisdiction, not only was no amendment ever made to our statute, but it was subsequently re-enacted in the Code of Civil Procedure and again in the Civil Practice Act without change.

The argument that led the English court to so construe the early statute is equally effective as to our own statute. Section 44 expressly states that the acknowledgment must be " signed by the person to be charged thereby." The omission of words permitting the signature by an agent becomes very significant when other legislation on our statute books is contrasted. It is very apparent that the Legislature had well understood how to express its intention when it deemed a writing signed by an agent to be an alternative compliance with a statutory requirement. Thus, in section 31 of the Personal Property Law (The Statute of Frauds), the Legislature rendered certain contracts void unless the agreement or some memorandum thereof " be in writing, and subscribed by the party to be charged therewith, *or by his lawful agent.*" (Italics supplied.) Section 85 of the Personal Property Law declares certain contracts of sale to be unenforcible " unless some note or memorandum in writing of the contract of sale be signed by the party to be charged *or his agent in that behalf.*" (Italics supplied.) A submission of controversy to arbitration is declared to be void by section 1449 of the Civil Practice Act unless it or some memorandum thereof is in writing " subscribed by the party to be charged therewith, *or by his lawful agent.*" (Italics supplied.)

Under section 259-a of the Real Property Law a contract to devise real property or to establish a trust of real property is void unless the contract or some memorandum thereof is in writing and " subscribed by the party to be charged therewith, *or by his lawfully authorized agent.*" (Italics supplied.) Conveyances of real estate or contracts to sell or lease real property must be in writing and subscribed by the person " or by his lawful agent, thereunto authorized by writing." (Real Prop. Law, §§ 242, 259.) The Negotiable Instruments Law expressly provides (§ 38) that " The signature of any party may be made by a duly authorized agent." In section 179 of the Civil Practice Act (applicable to tender and offer of compromise) it is provided: " Unless an offer or an acceptance, made as prescribed in either of the last four sections, is subscribed by the party making it, his attorney must subscribe it and annex thereto his affidavit to the effect that he is duly authorized to make it in behalf of the party."

It is clear, therefore, that when the Legislature declared in section 44 that the writing must be signed by the person to be charged thereby, it intended to exclude a writing signed by any one other than that person. The continued omission of such words as " or by his agent " must be deemed to have been made deliberately by the Legislature. Were we to now read these words into this statute, we should not be construing it but amplifying it. The wisdom of that change is for the Legislature to consider and not for the courts. (*Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341, 345.)

No reported decision has been found by counsel or the surrogate in this State construing this portion of section 44. There appears to be only a single decision construing the somewhat similar provision of section 59. (*Brill* v. *Brandt,* 176 Misc. 580.) In that decision it is stated that the writings signed by the " duly authorized attorneys " were sufficient acknowledgments to satisfy section 59 (Civ. Prac. Act) and to toll the statute. The point is merely stated without discussion of the reasons supporting it, and the facts are not detailed. In so far as it is conflict with the views here expressed, I am compelled to disagree with it.

In New Jersey it has been held that an acknowledgment to defeat the operation of the Statute of Limitations must be signed by the party chargeable thereby, and that a writing by an agent of that person is not sufficient for that purpose. (*De Raismes* v. *De Raismes,* 70 N. J. Law, 15; 56 A. 170.) The New Jersey statute was an exact transcript of Lord Tenterden's Act without the subsequent amendatory phrase as to signature by the agent.

The surrogate holds, therefore, that under section 44 of the Civil Practice Act, an acknowledgment in writing by an agent is ineffectual to take the case out of the operation of the statute. The acknowledgment to be effective must be signed by the obligee only.

*Second.* Even if an agent could make a binding acknowledgment under the statute, the attorney for the deceased judgment debtor had no authority to make such an acknowledgment.

The letters which are claimed to constitute an acknowledgment of the indebtedness were written during the years 1922 and 1923 by Mr. Webster who was then decedent's attorney. The attorneys of record were a firm with which Mr. Webster was then associated, but all of the details were apparently handled by him personally. From the context of the letters produced by the claimant, it may be inferred that the attorney was seeking to effect a compromise or settlement in respect of the judgment. No written offer of compromise has been produced nor are the terms of the proposed compromise shown. References in the letters that have been offered

indicate, however, that such may have been the objective of the negotiations.

Mr. Webster now appears in this proceeding as attorney for the claimant (judgment creditor) to endeavor to enforce against the estate of his former client the very claim which he had once been retained to resist or to compromise. The loyalty which he once swore to his former client has now been transferred to that client's adversary. The claim he once sought to settle to the advantage of the judgment debtor, he now seeks to enforce to the advantage of the judgment creditor.

The anomalous situation in which he now finds himself clearly reveals the wisdom of scrupulous adherence to the Canons of Professional Ethics of the American Bar Association. The thirty-seventh canon states: " It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client." The seventh canon also imposes the ethical duty of continued loyalty in another form.

As a witness in this proceeding, this attorney attempted to give evidence of written correspondence with his former client to show his authority to make an acknowledgment of the debt. This evidence was excluded by the surrogate. (Civ. Prac. Act, § 353.) No other evidence has been offered to show that he was expressly and directly empowered to make an acknowledgment of the indebtedness or to bind the client for a longer period of time. If any such authority exists, it must be found as one of the implied terms of the contract of retainer of the attorney. We are not here concerned with the apparent scope of the attorney's authority. " Whether or not the agent has apparent authority to make the statement is immaterial since the statement is introduced, not for the purpose of proving that something happened because of it, but because of the rule which permits one's own statement to be used against him." (Restatement, Law of Agency, § 286, comment b.) The admission, to be binding, must be within the actual scope of his agency. In the absence of direct express authority to make such an admission the question then is whether it is within the implied scope of the authority of an attorney for a debtor to make a written acknowlededg-

ment of the indebtedness sufficient to take the claim out of the operation of the statute. The general rule is that an attorney possesses no such power. (*Creuse* v. *Defiganiere*, 23 N. Y. Super. Ct. 122; *Mutual Life Ins. Co.* v. *United States Hotel Co.*, 82 Misc. 632, 650; *Crist* v. *Garner*, 2 Penrose & Watts [Pa.], 251, 262; *Pequamick Co.* v. *Brady*, 1 Phila. [Pa.] 220; 1 Thornton on Attorneys at Law, p. 358.)

In *Countryman* v. *Breen* (241 App. Div. 392, 394; affd., 268 N. Y. 643) the court said: " It is the law in the State of New York that an attorney cannot settle a suit and conclude his client in relation to the subject in litigation without the client's consent." It seems equally clear that when an attorney is retained to settle or compromise a claim, he has no authority to bind his client to a new and greater liability without his express consent. In *Matter of Michel* v. *Whitecourt Construction Corp.* (264 N. Y. 23) the question was whether the attorney for one of the parties had authority to consent to a submission to arbitration. Judge LEHMAN wrote: ": In this State the statute provides for a formal submission to arbitration only by writing ' duly acknowledged or proved, and certified, in like manner as a deed to be recorded.' (Civ. Prac. Act, § 1449.) Certainly an attorney has no implied power to make such submission " (pp. 28–29). Professor Wigmore states the rule: " In the first place, an *attorney* is not a person whose admissions may be used against the party-client, except so far as concerns the *management of the litigation;* and this principle applies equally to the quasi-admissions here concerned and to the solemn admissions already discriminated. * * * The reason for this limitation is that the attorney's admissions can affect his client so far only as he has authority to act as agent in his client's place. * * * That authority, so far as it is to be implied from the mere general appointment as attorney, and has not been enlarged in the particular case, extends only to the management of the cause. But, conversely, all his admissions during that management, including the utterances in the pleadings, do affect the client." (4 Wigmore on Evidence [3d ed.], § 1063.)

In *Lytle* v. *Crawford* (69 App. Div. 273, 278) the court said: " While attorneys engaged in the actual management of a cause may bind their clients by admissions, while so engaged or by statements and correspondence relating thereto, yet they have no authority under a general retainer to compromise an action or to bind a client by statements that he has no cause of action, or that he has surrendered whatever rights he possessed. It does not appear in this case what the engagement of the attorneys was or just what authority had been given to them. The most that can

be inferred is that of a general retainer to prosecute a claim against the defendants, and it would be a great stretch of authority to hold that under such circumstances they could advise the party against whose interest they were retained, or make statements upon which such person might act, and thereby create an estoppel against the client whose interests they were retained to protect."

An apt statement was made by Judge BORST in *Mutual Life Insurance Co. v. United States Hotel Co. (supra,* 650) wherein he said that the authority of an attorney " cannot be presumed but must be proved to admit the liability of his client to pay large sums of money or to *waive for him the Statute of Limitations.*" (Italics supplied.)  In *Houghton v. Ellis* (19 Col. App. 125; 73 P. 752) it was held that an attorney had no authority to make a new promise renewing a debt discharged by insolvency proceedings.

It has been suggested that relative to the binding effect of admissions made by attorneys, a distinction should be drawn between attorneys retained generally and those retained to conduct negotiations for a compromise, and that the latter have authority to toll the Statute of Limitations by an admission of the existence of the debt, although the former have not such authority.   There is no valid basis for such a distinction.   An agent delegated to effect a compromise of a claim has been held to have no authority to make such an admission. (*Creuse v. Defiganiere, supra.*)   The soundness of this principle is evident when the character and effect of such admissions are considered.

In respect of claims other than upon a judgment, the acknowledgment must be in terms not inconsistent with an intention to pay and from which a promise to pay may be inferred. (*Connecticut Trust & S. D. Co. v. Wead,* 172 N. Y. 497; *Manchester v. Braedner,* 107 id. 346; *Lincoln-Alliance Bank & Trust Co. v. Fisher,* 247 App. Div. 465; *Matter of Ewald,* 174 Misc. 939.)   An action upon such claim is then substantially, though not in form, upon the new promise. (*Shoemaker v. Benedict,* 11 N. Y. 176, 183; *Winchell v. Hicks,* 18 id. 558.)   It is clear that no attorney can conclude his client by such a new promise without the client's consent.   (*Countryman v. Breen, supra.*)

In the case of a claim based upon a judgment it is not essential that there be a new promise to pay it.   All that is required is the acknowledgment of the judgment as a valid subsisting obligation. (*Hyde Park Flint Bottle Co. v. Miller,* 179 App. Div. 73, 74; *Arizona Fire Ins. Co. v. King,* 172 Misc. 165, 167.)   Such an acknowledgment has the same practical effect, however, as a new promise to pay an ordinary claim.   The party would be equally concluded in either case.   The result in either case would be the imposition of a

new and further liability upon the client. No attorney has such authority unless the client expressly consents.

The surrogate holds, therefore, that Mr. Webster, the attorney for the deceased judgment debtor, possessed no authority to bind his client by an acknowledgment of the existence of the judgment as a valid subsisting obligation. In the absence of direct proof of an express authority, the letters produced by him were not admissible in evidence against the estate of the decedent.

(2) The claim of J. Burleigh Cheney, a creditor, upon a judgment recovered against the decedent in his lifetime is allowed and priority granted pursuant to the provisions of subdivision 3 of section 212 of the Surrogate's Court Act.

This judgment was docketed on February 21, 1919. If the applicable twenty-year Statute of Limitations had not been tolled or interrupted or extended in the manner specifically provided by the terms of section 44 of the Civil Practice Act, the judgment creditor's claim would have become non-existent in 1939. (*Matter of Murray*, 272 N. Y. 228; *Matter of Hoes*, 183 App. Div. 38.) Under the terms of the statute, the presumption of payment of a judgment is conclusive except against a person " who within twenty years * * * makes a payment " on account of the judgment. In the pending proceeding it has been shown conclusively that the decedent paid on February 1, 1923, the sum of $100 in partial satisfaction of the judgment. Thereby the statute was extended for a period of twenty years beyond such date of payment. (*Matter of Murray, supra,* 233; *Jennings* v. *Loucks,* 163 Misc. 791; Civ. Prac. Act, § 44.)

The defense of the Statute of Limitations is, therefore, overruled and the claim held to be valid. The computation of the amount of principal and interest due, submitted by the attorney for the objectant, is erroneous and should be recomputed and the correct amounts of principal and interest set forth in the decree to be entered therein.

(3) The claims of Curtis, Mallet-Provost, Colt & Mosle and of Thomas Roberts have been disposed of by adjustment and are marked, in the present proceeding, dismissed upon consent.

(4) It is undisputed that the domicile of the decedent at the time of his death was in the State of New Mexico. He died intestate. Under the law of that State his widow is his sole distributee. (N. M. Stat. [1929 Comp.] chap. 38, §§ 38–109.) Succession to the personal property of a deceased person is governed by the law of his domicile, and she is, therefore, entitled to receive the entire net estate being administered in the State of New York. (*Peterson* v. *Chemical Bank,* 32 N. Y. 21, 44; *Parsons* v. *Lyman,* 20 id. 103, 112.)

[Other directions included in the original decision of the surrogate omitted because not of general interest and because of their subordinate importance.]

Submit decree on notice settling the account and the supplemental account accordingly.