(74 App. Div. 444.)

### HOBART v. VERRAULT.

(Supreme Court, Appellate Division, First Department.  July 8, 1902.)

1. NOTES—SIGNATURE—GENUINENESS—COMPARISON.
    Where the genuineness of the signature to a note was disputed, an application to become a citizen of the United States, signed with the name of the maker of the note, was not admissible for purposes of comparison, in the absence of any evidence that the maker of the note was the person who signed the application.
2. WITNESSES—TRANSACTION WITH DECEASED PARTY.
    Code Civ. Proc. § 829, provides that in an action against the representatives of a decedent no adverse party shall be competent to testify as to any transaction with the decedent. In an action against an administrator on a note purporting to have been signed by his de-

---

¶ 1. See Evidence, vol. 20, Cent. Dig. § 681.

cedent, defendant's witnesses testified that they were acquainted with the handwriting of deceased, and that the signature to the note was not hers. Held not to render testimony by the payee that he saw deceased sign the note and a certain indorsement thereon admissible despite the statute.

Appeal from trial term, New York county.

Action by Norman L. Hobart against Alphonse Verrault, as administrator of Zelie Verrault, deceased. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

James P. Niemann, for appellant.
James F. Horan, for respondent.

HATCH, J. The complaint in the action declares upon the instrument sued upon as a promissory note. So far, however, as the rights and liabilities of the parties are concerned, it is immaterial whether the instrument in its present form be regarded as a promissory note or as an agreement for the payment of money. As the rights of third parties are not involved in the controversy or affected by the judgment, the plaintiff may recover, assuming that the instrument can be enforced, even though it has lost the attributes of a promissory note, and become a simple agreement for the payment of money. It is averred in the complaint that the defendant's intestate made, executed and delivered her promissory note in the words and figures following:

"$6,000.00. New York, Jany. 2, 1879.

"Six months after date I promise to pay to the order of N. F. Howe six thousand dollars, for value received. Zelie Verrault."

The evidence tends to establish that the note was executed and delivered to the payee therein named on or about the time of its date. The note was not paid at maturity, and thereafter, on January 31, 1881, it is claimed by the plaintiff that, in consideration of his promise to forbear the enforcement of the note, the deceased wrote across the face of the same: "Ce billet bon qu'apres ma mort. Janvier 31, 1881. Zelie Verrault,"—the English translation of these words being: "This note good only after my death. January 31, 1881." After making this indorsement it is claimed that the intestate delivered the instrument to the payee therein named. The intestate survived until on or about the 28th day of September, 1899, during which time the payee of the note held possession of the same, and forbore to enforce payment thereof. After the death of the intestate the plaintiff indorsed the note without recourse, and delivered the same to the plaintiff, who is now the owner and holder thereof. The answer avers that the signature to the note and to the extension of the time of payment are forgeries, and that the same were not the acts of the intestate. The answer further avers the statute of limitations, and demands judgment that the complaint be dismissed. The case was tried before the court without a jury, who awarded judgment in favor of the plaintiff. It appears from the dates on the instrument that at the time when the indorsement

of extension was placed upon the note the same was then due and payable, and had been for nearly two years; that between the time of the indorsement of extension and the death of the intestate more than six years elapsed. If, therefore, the effect of the indorsement of extension did not operate to extend the payment of the note to the time of the death of the intestate, the statute of limitations had run against the same, and it cannot be enforced unless it is saved from the operation of the statute by the indorsement of extension and the acts of the parties thereunder. It is to be observed that the note, in its inception, did not draw interest, so that during the period between the date of execution and delivery and its maturity no interest accrued thereon. When, however, it became due and payable, interest attached to the sum secured to be paid by operation of law, unless the indorsement of extension, together with the acts of the parties thereunder, created a valid agreement for the extension of payment of the note during the lifetime of the intestate, when, according to its terms, no interest would accrue thereon until after maturity. The effect of such contract, therefore, was to extend the payment during this period without interest, and, as the intestate would have the use of the money during her lifetime, it constituted a distinct and valuable consideration moving to her for the agreement of extension.

In addition to this, the act of forbearance, in consideration of such extension of payment, in enforcing the note, also constituted a valid consideration sufficient to sustain the promise to pay. It is said, however, that, as there was no consideration for the promise to forbear the enforcement of the note moving to the payee therein, he was not bound thereby, and was at liberty to sue upon the note, and enforce the same immediately, in consequence of which, as to him, the contract was without consideration, and, as the right existed to enforce at all times after the maturity of the note, the statute continued to run against the same, and was not saved by the indorsement extending the time of payment. We do not think that the fact that the payee in the note might have enforced the same by action at any time after maturity, notwithstanding the indorsement of extension, is controlling of the question as to the running of the statute. In Strong v. Sheffield, 144 N. Y. 392, 39 N. E. 330, it was held that a request by a debtor to extend the time of payment furnished a good consideration for an indorsement by a third person of payment of the note, even though the creditor might immediately enforce payment where the agreement to forbear was acted upon for a reasonable time. See, also, Porter v. Thom, 30 App. Div. 363, 51 N. Y. Supp. 974; Greene v. Odell, 43 App. Div. 494, 60 N. Y. Supp. 78. While the creditor is not bound by the agreement of extension, and may enforce payment of the instrument, yet where he complies with the terms of the contract, and actually forbears, such contract is good, and may be enforced. These cases, however, do not determine what effect such a contract has upon the statute of limitations, but they do determine that actual forbearance, although there is no legal obligation to forbear, furnishes a good consideration, even as to a third person, who assumes liability based thereon. As the agree-

ment in the present case was acted upon by the payee, and the intestate had the benefits arising therefrom, it would seem that in principle she ought to be bound according to the terms of her engagement, and, having received the benefit, as contemplated by the parties, when the agreement of extension was made, her representative ought now to be precluded from availing himself of the plea of the statute of limitations. In Rowe v. Thompson, 15 Abb. Prac. 377, the defendant, being indebted, procured his creditors to sign the following instrument: "We, the creditors of T., agree not to sue or molest him for his indebtedness, or the debts owing to us by him, for two years." It was held that as to the creditors signing such instrument it operated as an agreement upon the part of the defendant not to plead the two years as a part of the statute of limitations; that its legal effect was to extend the statute of limitations for two years. In that case there was no agreement upon the part of the creditors to relinquish anything, nor any right except to forbear enforcing their claim. There, as in the present case, suit could have been begun at once, notwithstanding the agreement, and the only consideration which moved to the defendant was the agreement to forbear prosecution. As such agreement was operative for two years, it suspended the statute for that period. A like result in principle must follow where the agreement extends the time of payment for the life of the party. In Webber v. President, etc., 23 Pick. 302, there was a proposal by the debtor that, if the creditor would forbear bringing an action, that he should have the same rights to enforce the agreement for one year more that he then had. The effect of the forbearance was to permit the running of the statute of limitations. The creditor refused to consent thereto, but did not in fact commence his action until after the statute had run. Chief Justice Shaw, in speaking for the court, said that, as the creditor did in fact defer action after such proposal, "the court are of opinion that this was a sufficient compliance with the defendant's offer, that they are bound by it, and that it is a good waiver of the statute of limitation." The facts of that case are much weaker in the matter of forbearance pursuant to an agreement than are the facts of the present case. The making of the agreement of extension and the acting upon it by the payee of the note embrace all the essential elements upon which to found an estoppel in pais. In Baker v. Insurance Co., 43 N. Y. 283, the court approved the definition of an estoppel in pais as defined by Cowen, J., in Dezell v. Odell, 3 Hill, 219, 38 Am. Dec. 628, in these words:

"An admission or statement by one individual intending to influence the conduct of another with whom he is dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the party making the admission or statement be cut off from the power of retraction, * * * in such a case it would be against good conscience, and a fraud, to deny the truth of the admission or statement thus made and acted upon; and this is the point upon which the question of estoppel turns."

It seems to us that all the elements of an estoppel as thus defined are found in the present case. The intestate, for a good consideration, extended the time of the payment of the note for the remainder

of her life, and thereby secured to herself a distinct benefit, of value to her. By reason of the agreement the payee of the note was induced to forbear its enforcement based upon such agreement of extension. To permit, therefore, the plea of the statute of limitation to operate as a defense to the note, would be distinctly prejudicial to the payee, and operate as a fraud upon him. It is quite probable that the agreement of extension operated to change the character of the instrument from a promissory note into a simple contract for the payment of money. According to its terms, it did not fall due until the death of the party. No notice of protest could be given for nonpayment, as there would be no person in existence at its maturity to whom it could be given, or upon whom a demand of payment could be made. It could only be after the appointment of a personal representative that steps could be taken to enforce the instrument. The change in the form of contract, therefore, took away some of the elements of a promissory note, but such fact does not change the legal rights of the parties. There are no intervening equities of third persons, and the doctrine of estoppel and the waiver of the statute of limitations apply. No matter what the technical character of the instrument may be, it still remains as an obligation to pay money. It is enough to say that there was a good consideration for the promise by the intestate to pay from her estate the sum secured to be paid. There was the fulfillment upon the part of the payee of forbearance in exercising his legal rights, and under such circumstances the personal representative should be held estopped from availing himself of the terms of the statute. If we are correct in these views, it follows that the statute of limitations is not available to defeat the enforcement of this instrument. It does not follow, however, that the judgment should be affirmed, even though we reach this result, as we think reversible error was committed upon the trial.

The plaintiff, for the purpose of proving the signature of the intestate to the note and the agreement of extension, produced from the records of the court a declaration signed by "Zelie Verrault" of an application to become a citizen of the United States. Undoubtedly such record would be competent as furnishing a standard of comparison with the signature upon the note and agreement, if the record was signed by her. The difficulty, however, is that there was no proof showing that the person who signed the application for citizenship was the same person who executed the note and the agreement. The only fact which appeared was that the two names were, for all practical purposes, the same; this, however, was not sufficient, as the signature to the application could not be said to be a standard unless it was shown that the intestate was the person who actually signed it; and of such fact no proof whatever was given beyond that presented by the record, consequently it could not be used as a standard of comparison, and it was therefore error to receive it.

Upon the trial the defendant called as witnesses the administrator and a grandson of the deceased. Each testified that he was acquainted with the handwriting of the deceased, and that the signature to the note and the agreement extending the time of payment was not in her handwriting. After this testimony had been received, the plain-

tiff called the payee named in the note, who testified, over the defendant's objection and exception, that he had seen the deceased write; that the signature to the note was the deceased's; that she ·signed it and delivered it to him, and that after the note had matured she wrote across the face of the note the words in French, extending the time of payment; that it was her signature; and that he saw her write the indorsement and sign the same. It is not contended but that the payee in the note was incompetent to testify primarily to the transaction had with the deceased, under section 829 of the Code of Civil Procedure. · The admission of this testimony, however, is sought to be justified by the plaintiff upon the ground that the examination of the defendant had opened the door, so as to permit such testimony to be given. It is evident that such contention cannot be sustained. Neither the defendant nor the grandson gave any evidence upon the subject of the transaction under which the note and the agreement for the extension were given. Their testimony did not bear thereon. It related to the one question as to the genuineness of the signature of the deceased, and this in no sense involved the transaction resulting in the execution and delivery of the note and the agreement. Consequently there was no opening of the door, and no foundation laid for the testimony of the payee as to the circumstances and transaction resulting in the execution and delivery of the instrument sought to be enforced. That testimony related to the transaction itself, and upon that subject no evidence had been offered by the defendant. The admission of such testimony by the payee was, therefore, error. Clift v. Moses, 112 N. Y. 426, 20 N. E. 392. These errors call for a reversal of the judgment.

The judgment should, therefore, be reversed, and a new trial granted, with costs to the appellant to abide the event.

O'BRIEN, J., concurs. McLAUGHLIN, J., concurs in result.

VAN BRUNT, P. J. I concur in result. I am of the opinion that the statute of limitations furnished a valid defense.

INGRAHAM, J., concurs.