# W. Edson Andrews, Respondent, *v*. Cosmopolitan Bank, Appellant.

(Supreme Court, Appellate Term, First Department, December, 1917.)

**Banks — impairment of capital — duties of directors of — superintendent of banks — evidence — actions — Statute of Limitations.**
**Statute of Limitations — waiver of — banks.**

Where in consequence of a letter from the superintendent of banks, calling attention to the fact that the capital of the defendant bank was impaired and requiring the same to be made good, the board of directors held a meeting, at which the letter was read, and unanimously adopted a resolution that the directors put in enough to make a surplus account exceeding the amount of such impairment, a contribution by plaintiff, one of the directors, to said account constitutes a gift and not a loan, and he is not entitled to recover the same by an action against the bank.

The fact that plaintiff subsequently received a receipt signed by the cashier of the bank, who was not shown to have any authority to sign anything more than a mere acknowledgment of the receipt of the money, stating that plaintiff's payment was a loan, is not sufficient to change the character of the transaction, nor could any understanding of the other directors as to their own payments, if competent for any purpose, justify the conclusion that plaintiff's payment was a loan.

Where the court, over defendant's objection and exception, admitted in evidence a letter from one of the other directors written after the adoption of said resolution to show that the writer understood the transaction to be a loan, but refused to admit a letter also written after said resolution by the president of the bank in his official capacity to the superintendent of banks, stating that the directors would " donate to the bank the amount (of their payments for surplus) as they originally intended," to which exclusion defendant excepted, the contrary and inconsistent rulings cannot be regarded as harmless.

The formal waiver of the Statute of Limitations by the directors of the bank more than six years after the adoption of the resolution in question, though probably sufficient to meet that

defense if there was shown to have been an original obligation to repay the money, could not create an obligation where none had ever existed. If it can be treated as an admission of the existence of such an obligation it was not conclusive and being inconsistent with the conceded facts did not justify a finding that the original transaction was a loan.

BIJUR, J., dissents.

APPEAL by defendant from a judgment of the Municipal Court of the city of New York, borough of The Bronx, second district, in favor of plaintiff, after a trial by a judge without a jury.

Choloney & Weinberger (Nathaniel Choloney, of counsel), for appellant.

Raymond B. Stringham, for respondent.

ORDWAY, J. Plaintiff sues to recover the sum of $125 claimed to have been loaned by him to the defendant. The defendant pleads a general denial and the Statute of Limitations. Plaintiff at the time of the transaction, August, 1906, was one of the directors of the defendant bank. At that time the capital of the bank was impaired to the extent of about $1,600, and the superintendent of banks, on August 13, 1906, wrote to the bank a letter calling attention to that fact and requiring the stockholders or directors of the bank to make good the impairment. In consequence of this letter a meeting of the board of directors of the bank was held on August 16, 1906, at which the letter from the superintendent of banks was read; thereupon " Mr. Knox suggested that there be a surplus account opened on the books of the bank, and after due consideration Mr. Williamson moved and Mr. Knox seconded the motion that the directors put in enough to make a surplus account of $2,000, which was unanimously adopted."

Apparently the plaintiff was not present at the meet-

43

Appellate Term, First Department, December, 1917.   [Vol. 101.

ing, since the minutes of the meeting do not show that he was.   Thereafter, apparently on August 17, 1906, plaintiff paid to the bank $125 and received a receipt therefor '' on account of fund loaned to bank by directors to create a surplus fund to be repaid as soon as bank's earnings will permit,'' signed by the cashier of the bank, who was not shown to have any authority to sign a receipt in that form.   It was also proved that other directors sent similar contributions accompanied by letters addressed to the bank, in one of which it was stated, for example, that the $125 was to be used as a '' private fund of loan to bank by directors * * * to be repaid to me from the bank's earnings as soon as practicable.''   One of the other directors testified that he understood that his own payment was a loan.   On August 17, 1906, defendant's president wrote to the superintendent of banks that the directors had '' voted unanimously to have a surplus fund of $2,000 and that the same be contributed *pro rata* by all the directors of the Bank.   It is a pleasure to inform you that the action of the Board was spontaneous, and each member present paid in his contribution so as to make $2,000 which will be in by Monday, August the 20th instant.'' It was conceded that the defendant has had a surplus and has been in a position to repay the money since about 1910, and on September 19, 1912, the board of directors adopted a resolution '' that the Statute of Limitations shall not apply to the $2,000 principal advanced by the directors of the Bank under resolution passed at meeting held August 16, 1906, in accordance with instructions from Banking Department of the State.''

The facts as stated above were not disputed.   The court below was of the opinion that they showed that the transaction was a loan and entered judgment for the plaintiff, from which defendant appeals.

In my opinion the plaintiff's payment to the defendant must be regarded as a contribution or gift, and not as a loan. When we take into consideration the letter of the superintendent of banks and the resolution of the board of directors of August, 1906, of both of which plaintiff must be presumed to have had knowledge, since he was a director of the bank, and is conceded to have sent in his check for his share of the amount to be " put in " and the letter of the president of the bank of August 17, 1906, it seems to me clear that it was the directors' duty to take steps to make the impairment good; that payments by the directors could not " make a surplus account of $2,000," unless the payments were outright donations and not loans, and that plaintiff's payment must therefore be regarded as a gift and as so intended, at least in the absence of any evidence of his own to show that he did not so intend it. See *Leask* v. *Hoagland,* 205 N. Y. 171; *Levy* v. *Friedman,* 83 Misc. Rep. 445. The fact that plaintiff subsequently received a receipt signed by the cashier of the bank, who was not shown to have any authority to sign anything more than a mere acknowledgment of the receipt of the money, stating that this payment was a loan, is not sufficient in my opinion to change the character of the transaction as shown by the record. Nor do I think that the understanding of the other directors as to their own payments, if competent for any purpose, can justify the conclusion that plaintiff's payment also was a loan.

If the transaction is to be treated as a loan, it not only nullifies the directors' formal resolution of August 16, 1906, but also implies bad faith on the part of the directors towards the superintendent of banks.

In addition to this, the learned trial justice erred in rulings on evidence which in themselves would require a new trial. He admitted, over defendant's objection and exception, a letter from one of the other directors,

written after the resolution of August 16, 1906, to show that that director understood the transaction to be a loan, but he refused to admit a letter, also written after that resolution, by the president of the bank, who was also a director, in his official capacity, to the superintendent of banks, stating that the directors would " donate to the bank the amount (of their payments for surplus) *as they originally intended,*" to the exclusion of which the defendant excepted. If the former of these letters was admissible the latter certainly was, and as they related to the crucial question in the case these contrary and inconsistent rulings cannot be regarded as harmless error.

The formal waiver of the Statute of Limitations by the directors of the bank in September, 1912, although probably sufficient to meet that defense if there was shown to have been an original obligation to repay the money, could not create an obligation where none had ever existed. If it can be treated as an admission of the existence of such an obligation, it is not conclusive, and being inconsistent with the conceded facts does not justify a finding that the original transaction was a loan.

Judgment reversed and new trial ordered, with thirty dollars costs to appellant to abide the event.

PHILBIN, J. (concurring). I concur with Mr. Justice Ordway. The directors certainly were under a duty to see that the impairment of capital was made good. Banking Law, § 17, August, 1906.* Having chosen not to impose assessment on the shareholders as required by law, the directors were bound to contribute as the shareholders would have done — without creating a new liability on the part of the bank, either actual or contingent. It may also be noted that plain-

---

* See Laws of 1892, chap. 689, § 17, as amd. by Laws of 1905, chap. 649.— [REPR.

tiff, by virtue of his office, was required to be a shareholder (Id. § 50) and was under an obligation to make contribution as a gift and not as a loan.

It is impossible to suggest any motive for the contribution by the plaintiff other than the exigency that arose by reason of the impairment of capital and the superintendent's requisition. To assume that plaintiff was unacquainted with the steps taken to apply the necessary remedy, is to assume that plaintiff, charged with the administration of the affairs of the bank (Id. § 43) and at a time when the very existence of the bank was threatened, was not performing his duty as director. Moreover, the very receipt on which plaintiff bases his claim shows that he had knowledge. Such receipt states that the contribution was made " on account of fund loaned to bank by directors, to create a surplus fund, to be repaid as soon as bank's earnings will permit." The plaintiff, therefore, knew that a surplus fund was to be created by the directors; he also plainly knew that he was not making an ordinary loan.

Bijur, J. (dissenting). I dissent. I regret to have to differ with my colleagues in almost every respect in the view which they take of this appeal.

It is conceded that the plaintiff was not present at the meeting of the bank directors on August 16, 1906. I know of no principle whereby a director of any corporation as an individual is chargeable either impliedly or constructively with knowledge or notice of proceedings at which he was not present. I think, therefore, that in construing the relation between these parties in respect of the issue here presented neither the letter of the superintendent of banks nor the minutes of the directors which it called forth have any material bearing. Nor does the principle recognized in *Leask* v. *Hoagland,* 205 N. Y. 171, have any application in the

sense indicated in the majority opinion herein. It is, in substance (citing from *Nay* v. *Curley,* 113 N. Y. 575), that *" in the absence of explanation,* the presumption arising from the delivery of a check is that it was delivered in payment of a debt, and not as a loan. * * * But a check may represent a loan or a gift, or money of the drawer, to be applied by the drawee to the use of the former as his agent or otherwise." Later on the court approves of Stephen's definition of a presumption as "a rule of law that courts shall draw a particular inference from particular facts *unless and until the truth of the inference is disproved.''* So far as the evidence in the instant case is concerned, plaintiff disproved any inference that might otherwise be drawn by showing the terms and conditions upon which his check for $125 to the order of the bank was delivered. This explanation is contained in the receipt of the cashier which specifies that the money was received "on account of fund loaned to bank by directors to create a surplus fund, to be repaid as soon as the bank's earnings will permit." There is, therefore, no room left for presumptions or inferences other than the fact so proved.

I have at least grave doubt whether the cashier is not, by virtue of his office, warranted in fixing the terms of a loan to a bank, but that question is also, in my opinion, not involved here. Plaintiff paid to, or deposited with, the bank a sum of money on the conditions expressed by the cashier. If the cashier was without authority to establish these conditions as binding upon the bank, then the money does not become forfeited to the bank, but, on the contrary, belongs unconditionally to the plaintiff. But plaintiff's proof went far beyond that point. He showed that other directors sent similar contributions, and that one of these directors inclosed his check in a letter reading:

" Enclosed please find my check * * * same to be used as private fund of loan to. bank by directors * * * to be repaid to me from the bank's earnings as soon as practicable."

This director was present at the meeting of .the directors on August 16, 1906. The bank accepted and cashed the check inclosed in the letter above recited. This letter, therefore, in my opinion, was competent and material evidence as both an admission on the part of the bank of the character of the transaction authorized at the meeting, and as an implied ratification of the act of the cashier in receipting for the moneys on that basis. Moreover, another of the directors was permitted to testify, without objection, that he contributed some of this money, and that " according to his understanding," it was to be a loan. In view of the informality of the trial, it might perhaps be said that this testimony is not entitled to its full apparent significance. But, on the other hand, the act of defendant's attorney in permitting it to be offered without objection illustrates the actual position taken by the defendant at the trial, namely, that even though the directors individu-. ally understood their contributions to be a loan, and the bank so accepted them, the illegality of the transaction, or possibly the attitude of the superintendent of banks in regard thereto, prevented the intention of the directors from becoming effective and imposed the will of the superintendent of banks upon them to the extent of creating a contract other than that which the parties may have intended. In other words, I do not think it was the contention of defendant's counsel at the trial that the transaction was originally intended as between the bank and the directors to be other than a loan on the terms stated in the cashier's receipt. But whatever his position may have been, I am of opinion that plaintiff has presented overwhelming evidence to

the effect that it was such a loan. It seems to be equally clear that the letter of the superintendent of banks, written to the president of the defendant on December fourth, nearly four months after the transaction, and the reply of the president of the defendant to the superintendent, dated December twenty-first, are wholly incompetent as against this plaintiff. Their only materiality to the issues involved (if they are to be regarded as in evidence at all) is that they show beyond a doubt that the president was aware that the cashier had given the receipts in the form in which plaintiff's receipt reads, and that the records of the bank disclosed that fact clearly to the superintendent. The existence of this condition for four months after the transaction, without objection on the part of the bank, constituted a further ratification of the authority of the cashier and a further confirmation of the original understanding of the parties in the premises. And finally, as an additional ratification and confirmation, we have the resolution adopted by the directors of the defendant years afterward, in which it was resolved that the Statute of Limitations should not apply to the $2,000 " *advanced* by the directors of the bank."

As I read the record, therefore, it seems to me that the evidence is conclusive to the effect that the transaction was as claimed by the plaintiff and as expressed in the receipt of the cashier, and this would be true even if the intention of the other directors in adopting the original resolution had been different. I do not think that the validity of the transaction under the Banking Laws of the state or the wishes or directions of the superintendent of banks had any materiality to the controversy. Whatever pains or penalties might be visited upon the plaintiff by virtue of any statute for a failure to perform, or an affirmative violation of, any statutory duty, this consideration could not impose

upon him a contract other than the one which had actually been made between himself and the defendant by mutual consent.

But since defendant's counsel has throughout insisted upon the illegality of the entire transaction, and the majority opinion refers to the "directors' duty to take steps to make the impairment (of the capital) good," that subject should perhaps not be left without some comment.  I am not cited to any part of the Banking Law which imposes upon the directors the duty to take steps to make good an impairment of capital except to the extent that section 17 permits the superintendent of banks to require the capital to be made good, in which event the directors must give notice to the *stockholders* of the appropriate and adequate assessment.  This provision suggests that in the instant case the directors undertook to make good for the time being the impairment of the capital and to "put in " *on behalf of the other stockholders* their *pro rata* of this deficiency.  While this transaction may not have been in strict compliance with the letter of the law or within the exact requirement of the superintendent of banks, *had he imposed an assessment* — which he did not — nevertheless it is clear that, under the plan as plaintiff has proved it to have been, an amount equivalent to the impairment was actually furnished to the bank irrevocably so far as the interests of the creditors might be concerned.  It was only to be repaid to the contributing directors "when the bank's earnings will permit," which must be interpreted as meaning when a surplus should exist.  In the event of that contingency, however, the directors would have been at liberty to declare a dividend in the same amount.  The substance of the transaction, therefore, as distinguished from its form, was an actual contribution by the directors on behalf of all the stockholders of the

Appellate Term, First Department, December, 1917.    [Vol. 101.

amount of the impairment with an assignment to these directors *pro rata* by each stockholder of his *pro rata* share of the first dividend which might be declared up to the amount of this total contribution.

We are not called upon to approve or disapprove the validity of a possible transaction in that form or to that effect; but it seems to me to be quite clear that in and of itself it would be meritorious on the part of the directors, advantageous to the creditors, and not unfair to the stockholders of the bank.

The judgment should be affirmed, with twenty-five dollars costs to the respondent.

Judgment reversed and new trial ordered, with costs to appellant to abide event.