W. EDSON ANDREWS, Appellant, *v.* COSMOPOLITAN BANK, Respondent.

First Department, July 11, 1918.

**Banks — action to recover loan made by director — receipt by bank indicating that contribution of directors was loan to be repaid — loan to bank not equivalent to contribution to make good impairment of capital — when director not bound by acts of officer of which he had no knowledge — evidence — letter of other director contributing to loan — limitation of actions — waiver of statute.**

Action brought by a director of the defendant, a bank, to recover money alleged to have been loaned to it. It appeared that the defendant, having been notified by the State Superintendent of Banks that its capital was impaired and must be made good, called a meeting of the board of directors who adopted a resolution that a surplus account should be opened and that the directors should pay in enough to make a certain surplus. The plaintiff did not attend this meeting but contributed his share of the fund to be raised and received from the defendant a receipt "on account of fund loaned to bank by directors, to create a surplus fund, to be repaid as soon as Bank's earnings will permit." *Held,* that the payment by the plaintiff was not a donation to the bank but a loan to be repaid by it when its resources would permit and that, such being the case, he was entitled to recover.

*It seems,* that such payments by the directors being loans did not form a surplus fund or meet the requirements of the State Superintendent of Banks inasmuch as the temporary advantage to the bank was offset by its obligation to repay said loans at a future date, so that the assets were not actually increased.

The plaintiff was not bound by the fact that the president of the defendant, after the action of the directors, wrote to the State Superintendent that the directors had voted to create a surplus fund and had contributed thereto *pro rata,* if he had no knowledge of the sending of the letter or its contents.

Nor was the plaintiff bound by a subsequent letter written without his knowledge to the Superintendent of Banks stating that the directors had relinquished the receipts for the money loaned and would donate their contribution to the bank, and it was error to admit said letter in evidence.

*It seems,* that there was no obligation on the part of the directors to make a donation to the capital of the bank as the law places the burden of making good the deficiency upon the stockholders.

The defendant cannot set up the Statute of Limitations as a bar to the action where the directors had adopted a resolution waiving the statute.

A letter written by another director indicating that his contribution was made as a loan was properly received in evidence.

SHEARN, J., dissented.

APPEAL by the plaintiff, W. Edson Andrews, from an order of the Appellate Term of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 19th day of December, 1917, reversing a judgment of the Municipal Court of the City of New York, Borough of Bronx, Second District, in plaintiff's favor.

*Raymond B. Stringham* of counsel [*William P. McCool* with him on the brief], for the appellant.

*Nathaniel Choloney* of counsel [*Choloney & Weinberger*, attorneys], for the respondent.

MERRELL, J.:

This action was brought in the Municipal Court of New York city by the plaintiff to recover from the defendant the sum of $125 and interest, which plaintiff claims he loaned to the defendant bank upon its promise to repay the same with interest as soon as the earnings of defendant would permit, and that at the time of the commencement of the action the defendant's earnings were sufficient to permit of such repayment, but the same was refused by defendant. The defendant is a New York State banking corporation, and at the time of the alleged loan plaintiff was one of its directors. Judgment was subsequently rendered in favor of plaintiff and against defendant for the sum of $179.97, being the amount loaned, with interest and costs and disbursements as taxed. The judgment of the Municipal Court was reversed at the Appellate Term (101 Misc. Rep. 672), and an appeal from such judgment of reversal taken to this court.

In defense of plaintiff's claim, defendant denies the alleged loan, and as a separate defense sets up the Statute of Limitations.

The conditions under which plaintiff claims to have loaned the $125 on August 17, 1906, were as follows:

On August 13, 1906, the State Superintendent of Banks addressed to the president of the defendant bank the following letter:                                  *"August 13th,* 1906.
" JESSE LANTZ, Esq.,
      " President Cosmopolitan Bank,
                " 805 Prospect Avenue,
                    " New York City:

" DEAR SIR.— Your quarterly report under date of August 6th, 1906, is received, and by it I ascertain that your expenses have exceeded your earnings since you started business $1,619.68. Your capital, therefore, is impaired to that amount. This should be made good by the stockholders, or, if you approve, by the directors of the bank. It would have been better, it seems to me, if a sufficient surplus had been paid in at the time of your organization to meet anything of this kind. You will please tell me what you propose doing in the matter.                    Yours very truly,
      " (Signed)                    F. D. KILBURN,
                            " *Superintendent.*"

From this letter it appears that there was an impairment of defendant's capital and the State Superintendent, as was his duty, thereby required that the same be made good.

Section 17 of the Banking Law, as then in force, provides that where there is an impairment of capital of a banking institution under the supervision and jurisdiction of the State Superintendent of Banks, it is his duty whenever he shall have reason to believe that the capital stock of such institution is reduced by impairment or otherwise below the amount required by law, to require such banking corporation to make good the deficiency within sixty days, and upon receipt of such notice it becomes the duty of the directors of such banking institution to give notice to and require each stockholder to participate in making good such deficiency. (Gen. Laws, chap. 37 [Laws of 1892, chap. 689], § 17, as amd. by Laws of 1905, chap. 649.)

It will be seen from the letter of the Superintendent of Banks above quoted that he refers to such duty on the part of the stockholders, but suggested that the directors might make good the impairment.

Three days later, on August 16, 1906, the board of directors of the defendant held a meeting. Plaintiff was not present thereat, but the minutes of the meeting of the board show that said communication of the Superintendent of Banks was laid before the board and upon suggestion of one of the directors a resolution was adopted that a surplus account be opened on the books of the bank, and that the directors pay in enough to make a surplus account of $2,000. A motion to that effect was unanimously adopted.

On August 17, 1906, plaintiff paid $125 to the cashier of the defendant bank as his share of said fund, for which payment he received from the bank a receipt in the following form:

" NEW YORK, N. Y., *Aug.* 17, 1906.

" Received from Dr. W. E. Andrews, One hundred twenty-five and no /100· Dollars, on account of fund loaned to bank by directors, to create a surplus fund, to be repaid as soon as Bank's earnings will permit.

" COSMOPOLITAN BANK,

" $125.      · M. M. CORWIN, *Cashier.*"

The question at issue here is whether or not the payment of this sum by plaintiff as his proportionate share of the amount required to meet the exigencies of the situation which confronted the bank by reason of the impairment of its capital, was a donation to the bank, or, as claimed by the plaintiff, a loan to be repaid by the bank when its resources would permit.

As before stated, plaintiff was not present at the meeting when the motion was made and unanimously carried that the directors should make up the deficiency, but that he understood when he paid the $125 for that purpose that the same was merely a loan and not a gift to the institution of which he was a director, seems entirely apparent from the wording of the bank's receipt which was given to him for such payment. It is quite evident that the bank, at the time, understood that these payments were simply in the nature of temporary loans to be repaid to the directors when the resources of the bank should permit. It appears that similar receipts were given to the other directors who made like payments to form this surplus fund.

The evidence discloses that on August 17, 1906, one Stephen Wray, who was also a director, and who was present at the meeting of August 16, 1906, when the resolution was adopted, sent in his contribution of $125, and at the same time wrote the bank as follows:

" <em>August 17th</em>, 1906.

" COSMOPOLITAN BANK,
　　" 803 Prospect Ave.,
　　　　　" New York City:

" GENTLEMEN.— Enclosed please find my check on the Union Trust Company for $125 drawn to your order, same to be used as private fund of loan to bank by directors at meeting of yesterday to be repaid to me from the bank's earnings as soon as practicable.

" Kindly forward receipt.

" Yours truly,<br>" S. WRAY."

It is very evident from the language used by said director in his letter that he understood that these payments were loans to be repaid by the bank. Of course, strictly speaking, such payments, if loans, did not form any surplus fund for the bank, and did not meet the requirements of the Superintendent of Banks, inasmuch as any temporary advantage received from such payments was offset by the obligation of the bank to repay the same at a deferred date and really in no degree increased the actual assets of the institution.

Immediately upon the advancement of the $2,000 by the individual directors, the president of the defendant wrote the Superintendent of Banks of the action of the directors and that it had been unanimously voted to have a surplus fund of $2,000, and that to create the same the directors had contributed *pro rata*. Plaintiff had no knowledge of the sending of this letter or its contents, and I think in no way can he be said to have been bound thereby.

Matters seem to have run along until December 4, 1906, when the Superintendent of Banks again wrote the defendant's president as follows:

" * * * It appears from the record that the directors have subscribed and paid in to the earnings the round sum

of $2,000. Were it not for this contribution the capital would be impaired. A receipt, however, has been given by the bank to the individual directors, agreeing to pay said sum as the earnings of the bank warrant. I must insist that unless this sum is absolutely donated to the bank by the directors, this contribution creates a liability even if a contingent one, and I do not think that I ought to allow the matter to remain in its present condition. What you should do is to create a surplus fund by subscription of all the shareholders amounting to at least $10,000. Unless this is done, the bank will be without any substantial surplus for some years, and in constant danger of impairment of capital if any loss should be sustained. If all the shareholders would contribute such a fund in proportion to the amount of stock held by them, they would greatly strengthen the position of the bank and hasten the time at which you could with propriety commence payment of dividends. Please give these matters your attention and let me hear from you at an early date.

" Yours respectfully,

" F. D. KILBURN,

" *Superintendent.*"

Thereby the •Superintendent very properly disapproved of the manner in which the directors had sought to make good the impairment of its capital and to furnish a surplus fund, and advised the president what should be done.

In response thereto, on December twenty-first, the president of the defendant bank, without knowledge on the part of the plaintiff, wrote the Superintendent of Banks as follows: " In regard to the amount paid in for surplus, the directors will relinquish the receipt they hold, and donate to the bank the amount as they originally intended."

This letter was not admitted in evidence by the trial court. I think no error resulted from such refusal to receive the letter in evidence. I know of no principle whereby it can be said that the plaintiff was bound by the declarations or promises of the president of the defendant contained in either of his letters. While it is undoubtedly true that the action taken by the directors in loaning the $2,000 to make

good the impairment of capital, which the Superintendent of Banks had criticised, did not increase the bank's resources, and while the Superintendent might have taken proceedings to liquidate the bank's affairs, the fact still remains that as between the plaintiff and the defendant, the payment of the $125 was merely a loan, and was so regarded and intended by the plaintiff, and accepted with that understanding by the defendant bank at the time the payment was made. No action on the part of the president or letter which he could have subsequently written without the knowledge or assent of the plaintiff could in any manner change the transaction or deprive the plaintiff of his right to recover at the proper time.

The evidence upon the trial was that at the time of the commencement of the action the affairs of the bank were such as to warrant a repayment of the amounts loaned.

No explanation was made upon the trial of the receipt which was given to the plaintiff, and no entry in the bank's books was introduced in evidence showing that the transaction was understood to be a gift. One of the directors testified that he understood that the payment was a loan. The Banking Department in December following the transaction recognized the same as a loan, and called the attention of the bank to the matter in the letter of December 4, 1906, above mentioned.

At a meeting of the directors held September 19, 1912, a resolution was adopted waiving the Statute of Limitations as to the $2,000 advanced by the board of directors under the resolution adopted August 16, 1906, thus evidencing an understanding on the directors' part at that time that the transaction was a loan, and that the bank would not interpose the Statute of Limitations as a defense to actions on the part of the directors to collect.

Upon the trial the defendant swore no witnesses and did not produce its books which would undoubtedly have thrown some light upon the transaction, and might have shown how the bank interpreted the transaction at the time. The receipts given by the defendant argue conclusively that the bank understood that the money was loaned to it by its directors. There was no obligation on the part of the directors as such

to make such donation. The most that the law required of them when apprised of a deficiency was to notify the stockholders of record and in the event of the latter failing,. then the affairs of the bank could be wound up by the Superintendent and the bank put out of business.

The defense of the Statute of Limitations interposed by the defendant bank, I think, is fully met by the resolution adopted by the directors at the meeting of September 19, 1912, in effect waiving such defense.

The Appellate Term, in reversing the Municipal Court, disapproved of the admission in evidence of the letter written by Director Stephen Wray, which was offered in evidence by the plaintiff. I think this letter was properly received. It showed that other directors were sending similar contributions and was from one of the directors who was present at the meeting when the plan was adopted, and evidently understood the intent of the directors and the defendant bank with reference thereto. The bank accepted the check which was inclosed in Director Wray's letter, thus impliedly ratifying the act of the cashier in receipting for the moneys paid.

It seems to me the situation would be very different if there was any obligation on the part of the directors as such to make good the impairment of the defendant's capital. What they did they did voluntarily, and had the right, so far as they were individually concerned, to impose such terms as they saw fit in consideration thereof. Their action did not meet the requirements of the State Superintendent of Banks and was not in fact a creation of any surplus fund, but it seems to me that is entirely aside from the question.

I think the decision of the Municipal Court was entirely correct, and that the determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court reinstated and affirmed, with costs.

CLARKE, P. J., LAUGHLIN and DOWLING, JJ., concurred; SHEARN, J., dissented.

Determination reversed, with costs, and judgment of Municipal Court reinstated and affirmed, with costs.